(21 Misc. Rep. 368.)

### TERRY et al. v. GLEASON et al.

(Supreme Court, Special Term, Kings County.   October, 1897.)

MUNICIPAL CORPORATIONS—CONTRACTS—INTEREST OF OFFICERS.

In an action against the board of water commissioners of Long Island City to restrain them from carrying out a contract made by them for the supply of water for the city, in which the complaint alleges that the mayor, who is ex officio member of said board, is the principal owner of the stock in the said water company, the mayor made affidavit that he "ceased to have any interest in said company" six months before he entered upon his present term as mayor.   *Held*, that affiant's statement is a mere conclusion.

Action by J. Rufus Terry and others against Patrick J. Gleason and others.   On motion for injunction.   Injunction continued.

Foster & Foster, for the motion.

Delavan & Van Vechten, opposed.

GAYNOR, J.   This is an action by taxpayers of Long Island City to have a contract between the city and the Woodside Water Company for the supply of water to the city annulled as fraudulent, and to have the board of water commissioners restrained from carrying it out.   The complaint shows that the said board, which consists of the mayor, the commissioner of public works, the president of the common council, and two other appointees of the mayor, made the said contract.   The said water company was organized by the said mayor in 1892, and he was one of the incorporators, and, as is shown by the certificate of incorporation, he owned 420 shares of its stock as against 85 shares held by the other incorporators.   The said mayor was also the individual owner of the land transferred to the said water company, and from which it obtains its water supply; and it is alleged that by means of his holdings of stock in said company he is the chief owner of it and controls it.   The city has a water plant of its own, and has for many years been engaged in supplying itself with water; notwithstanding which the said board, so composed of the mayor and other commissioners, entered into the contract in question with the water company, with the intention, it is alleged, of rivaling, neglecting, and injuring the city's plant, and getting money from the city.   The said mayor and commissioners have discontinued pumping stations of the city and removed the machinery and created a water scarcity and alarm. for the benefit of the said company.   The said contract requires the city to pay the said

company about $80,000 a year. It was made without the consent of the common council, though the city charter requires such consent. By the charter of the city, all officials of the city are prohibited from being interested directly or indirectly in any contract with the city. These things and others of the same tenor are specifically alleged. The mayor makes affidavit that he "ceased to have any interest in said company" six months before he entered upon his present term as mayor. He does not say he sold his stock. His statement that he ceased to have any interest, is not for him to make, but is for the court to decide from facts; and if he had shown that he actually and in good faith sold his stock, naming the purchaser, the court might see that he has no interest; but it cannot accept his mere conclusion upon that subject. He may have nominally transferred his stock so that he has no legal interest, and yet he may have an actual interest. This will be decided on the trial when all the facts are brought out. The law, in its administration, should find no difficulty in looking through shams and disguises. It is the mayor's duty and that of the other commissioners to foster and extend the city's water plant, and not rival and neglect it for their own profit, or the profit of any one else. The facts pleaded present a scandalous case of official dishonor, corruption and betrayal of trust, and the denials presented impair them very little, if at all. Such official betrayals of public interests have become so common that it is no wonder if many have come to despair that they will ever be remedied or done away with. That in the charter of the said city, as of many other cities, is found an express prohibition against city officials being interested in contracts with the city, is in itself a striking testimony of the prevalance of official greed, dishonesty and faithlessness. The law of common honor and morality forbids even the most ordinary agent to have any interest adverse to his principal. Government under which the necessity for such a standing prohibition should continue, could not in the nature of things long endure. The plaintiff here should have full opportunity upon the trial to prevent the alleged wrongs he complains of, and to that end the injunction is meanwhile continued. Motion granted.